Good morning. Margaret Lambrose on behalf of Dustin McCaskill. If I could reserve two minutes for rebuttal. The question before this court is not whether Phillips felt threatened, and it's not whether Phillips felt that he could be harmed at some point in the future. The question before this court is whether Mr. McCaskill committed assault under Nevada law when there is nothing in the record to support a finding of immediacy, which is a necessary element of the crime. Why is that? Why is immediacy? The circumstances of this case, why is there nothing there to say? I'm just trying to understand the facts. Thank you, Your Honor. So in this case, all of the statements at issue were either made over the phone or by electronic communication. None of the statements were made in person. So is it your position that they have to be made in person? You can't have an immediate threat if they're on the phone, even if they're next door? So, Your Honor, in Nevada, the cases that have interpreted the assault statute, the cases that interpreted the assault statute prior to the 2001 change to the statute, which was Anstead, and Anstead specifically found that menacing words are not enough. There must be that next step, that temporal connection, immediacy. And then the statute was changed. But the language to the statute pertaining to immediacy and the reasonable apprehension of immediate bodily harm was again considered by the Nevada Supreme Court in Rose. And in Rose, the Court again said there has to be immediate violent injury. That was a case where somebody had a gun, and they were threatening face to face. But that does that mean, I still am asking, does that mean that a telephone call can't be an immediate threat? There may be a situation where a — if there is a phone call and somebody, the person is apprehending, that they're — they are going to be harmed immediately, so that that is a reasonable belief because of the immediacy, then that there could be — But why is this case different? Because in this case, Your Honor, there is absolutely no indication at all that Officer Phillips believed that he was going to be immediately injured. And he even says in his own words that all of these statements were made over the phone and that he was not in immediate bodily harm, and that is ER 88. So he says he was nervous. He says that he was worried, and that is ER 75. He's nervous. He's worried. He believes that he's being harassed. That's ER 51. But at the next breath, he says that he — before people work themselves up to actually harming, they make threats, they do various things. Before something could happen in the future, not that it was happening immediately, not that his safety, not that he was going to be harmed immediately, but something may happen to him in the future that he was nervous about. So an example would — if he called him on his cell phone and said, I'm on my way to your house to kill you, would that be enough? So, Your Honor, what's interesting about that is when the Nevada legislature changed the law on assault to add the intentional infliction of immediate bodily harm or the intentional apprehension of immediate bodily harm, they discussed whether they were going to use the word imminent, which means that it is very likely going to happen, or if they were going to use the word immediate, meaning temporally this is going to happen right now. So if somebody makes a phone call and says, I'm going to come to your house and I'm going to get you and I'm on my way, under this statute, I do not believe that that would be assault because there is no temporal connection with the bodily harm, which is what the Nevada Supreme Court has held repeatedly to be necessary, that immediate apprehension of bodily injury. And if there is not an immediate apprehension of bodily injury, then the belief that you are going to be immediately injured is not a reasonable one. What's the — you keep stressing this temporal concept, so what's the outer limit in terms of the amount of time between the verbal statement and, you know, the prospect of some physical violence? And that's a good question, Your Honor. And the cases that we do have in Nevada currently are Anstead, Sharp, which is an unpublished Nevada Supreme Court decision, and Rose. And in each of those cases, we had face-to-face contact where somebody was lunging, somebody was moving forward, and they had either a knife or a gun. In Anstead, it was a knife. In Rose, it was a gun. In Sharp, it was a gun. And they're lunging forward. It appears under the state of the law in Nevada as it is right now that that is what is required. Roberts, a matter of seconds, not a matter of minutes, as in Judge Corman's hypothetical. Exactly, Your Honor. Are there any Nevada cases that have basically ruled out the — I mean, the hypothetical that Judge Corman gave seems to me to be within the scope of the statute. I would have thought if the person's like, I'm around the corner, I'm on my way, and you are going to get it. But you say no, and I guess is there some Nevada case that supports that view? So there is not a Nevada Supreme Court case that supports that view. We do have the district court case, the Federal District Court case, which is Lopez. And in Lopez, the Federal District Court found that it was not enough for the — in that case, the plaintiff, because that was a civil case, but they were interpreting the Nevada assault statute. It was not enough for the plaintiff to say to the victim in that case, I'm going to get you, I'm going to blow up your truck, I'm going to shoot you. In that case, the Court said, at best, these are threats of future harm. This does not rise to the level of assault. So, no, we do not have a Nevada Supreme Court case analyzing whether those threats over the phone could potentially be assault. But it's clear what the Nevada Supreme Court has found is necessary under the cases that they've decided, and what they've found is necessary is immediacy. Remind me, what was the — from the government standpoint, if you were going to pick out one of the verbal statements your client made, what's the most sort of damning one, from the standpoint of this immediacy concept? So, Your Honor, that's difficult to do, because when you put his statements into context, what he's saying to his probation officer is, I'm going to get you, I want to go to the court, I'm going to beg the judge on my knees to be rid of you, I'm — you're going to pay, I'm going to post things on social media about you, I'm going to have your ASS, I'm going to go and — and file a police report against you. So, although there are these statements of things that he's going to do at some point in the future, in the context of what he was actually going to do, it does not lead one to believe that those were threats of harm when they're always followed by, I'm going to post things about you, I'm going to go to the court. He's — he's saying, I'm going to expose you by all of these other means, not by hurting you. Do you want to save the balance of your time for rebuttal? If I could — Are you going to address the sentencing issue, or do I have to write — I've forgotten my words. Oh, I will — I can address that now, or I could have — Go ahead. Okay. Thank you, Your Honor. So this was a misapplication of law because the Court did not apply the correct elements of the assault statute. Because there was a misapplication of law, she found a Category B violation. This was not a Category B violation because a crime did not have a guideline range. She sentenced him to a 10-month guideline range under a B violation. This is the other side of the coin of your first argument, isn't it? Yes, Your Honor. Yes. And your client is still — even with the full 10 months, is scheduled to get out in like a month from now or something? His expiration date is December 18th. Okay. So, I mean, if you were to prevail here for this to matter, you need the mandate to issue immediately, I assume, right? We would request, and we greatly appreciate that the Court has taken this on an expedited schedule, and we would request that. Okay. Be done. All right. Thank you. Let's hear from counsel for the government. We'll give you a minute for rebuttal. Thank you, Your Honor. May it please the Court, Bill Reed for the United States. The District Court revoked Mr. McCaskill's supervised release based upon four violations, one of which — only one of which is the basis for the appeal before this Court here today. The District Court correctly found that by preponderance of the evidence in the light most favorable to the government, after listening to the witnesses and with the knowledge and context of the background of this case, that Mr. McCaskill's statements were threats to his probation officer, and that those threats caused the probation officer to have fear of injury from Mr. McCaskill, and that this was reasonable in light of all the circumstances. And those circumstances, which were well known to the Court because the Court handled Mr. McCaskill's original offense. What about your adversary's argument that — about immediacy, that there was no threat of immediate — that he would be immediately assaulted, and that this is a requirement? As by the way, it is a requirement to go back through cases to robbery and extortion. They have that immediacy requirement as well. If I could just focus on this one here. One at a time. Thank you, Your Honor, with that indulgence. Immediacy, I would concede with my colleague and with the Court, that immediacy is the crux of the issue for the Court to decide here. The District Court, which was in the best position, hearing all the evidence and having the background, made a determination by preponderance of the evidence in the light that this probation officer, that there was — it was reasonable for him to have a reasonable apprehension of immediate bodily harm. The telephone — Well, what's your definition of immediate, then? Because the most damning threats — I think your opponent fairly characterized them. They don't have any kind of temporal component to them at all. It's not even like, I'm going to get you today, you know, an hour from now, next week. They're nothing. They're just completely vague and indefinite as to something that's going to happen in the future. So what — how are you defining immediate, then? If I could respond by saying I don't believe that the Nevada Supreme Court or the statute, as far as I could determine in my preparation, has given a definition. I think it's for the trier of fact, I think, to make that — Well, that concept has some legal content to it. And I'm asking for — you obviously have in mind something that encompasses this case. And so what is it? Like, within a week, within a month, what's the time component? I don't think I can parse that out exactly. But I can say that the statute was modified or amended where, in the past, it required the present ability coupled — an unlawful attempt coupled with the present ability to commit the assault. That language was done away with. But that was for a very specific reason, right, that has nothing to do with the facts of this case, if I'm remembering. And I think the legislature's — the legislative history was — the reason was to encompass threats. And these were threats. And we don't know where Mr. McCaskill was exactly when he made these telephonic threats and over — by texting. It could have been immediate. And it was certainly reasonable for this probation officer, knowing that this — Mr. McCaskill had made these very explicit threats of death to law enforcement officers that were the basis of his underlying offense. Yes, Your Honor. Yeah. If I understand — help me with the facts here. If I understand it, what prompted this phone conversation was that he didn't — he didn't want his probation — he didn't — what was he? He was — he was on supervised release? Yes, Your Honor. And he didn't want it revoked? And he didn't want the marijuana removed from his mother's house where he lived? Is that correct? That's the best that — that I can piece together as to what motivated him to go sideways, if you will, with the probation officer. I think the evidence — Because something was going to happen to him. He was angry with the probation officer, as I understood it. He was angry with the probation officer. I don't — I think the parties agree to that. I think the evidence was that the probation officer was — was going to work with him on these substance abuse violations and was trying to get him enrolled in an aftercare or an intensive patient or some type of substance abuse treatment and was going to work with him. But when — for whatever reason, when Mr. McCaskill learned that the probation officer had been to his residence and had had interaction with his mother and there had been some marijuana in the residence, that seemed to what — be what set him off on the probation officer. It's not exactly clear, and it doesn't make an entire sense why he got so angry with the probation officer. He wasn't in — he was not in imminent danger of being hauled before the district court and violated. I don't believe that — Okay. — that was the evidence. I would submit, though, that here the district court had this institutional knowledge of Mr. McCaskill, observed him both in the underlying proceeding, knew full well what he was certainly capable of — of threatening to law enforcement officers. And this probation officer was on the receiving end of language that was not quite as explicit, but certainly didn't leave much room for the imagination as to what — He knew where to find the probation officer. Certainly. He'd been to his office and — and — and didn't know — the probation officer didn't know his whereabouts. I think that was one of the violations that he failed to report. So here the court's probation officer was — had this reasonable apprehension. Can I — I know you weren't the AUSA who handled this one, right? No, Your Honor. But, I mean, I don't know if there's a way you could just send a message back to your colleagues. In this kind of case, it just would make so much more sense if you all would encourage the district court, the district judge, to just make an alternative — pronounce alternative sentences. When this kind of thing is contested — we're talking about a month, and you've — we have to have had this entire appeal over a month's time, when I fully suspect the judge would have said, even if it's 3 to 9 instead of 4 to 10, you are going to get some extra time for this, sir, because you're not — I'm not going to permit you — even if it's not an imminent threat, I'm not going to permit you to threaten my probation officers. And you're going to get an — I'm going to go up a month above what the guidelines would otherwise call for. And so even if I'm wrong in thinking that this satisfies Nevada, whatever this Nevada assault thing is, I would still give him 10 months. If you would just encourage the judge to do that, you could save all of us a lot of time. So I just — Message — received a message well taken, Your Honor, and I was searching for evidence of that throughout the record. I know. I look for it as well, because it seems like this is totally reasonable. I understand why he got the high end of whatever it was going to be, and I think the judge made a determination that 10 months was the right sentence. But I will — just speaking for myself, I don't think technically that this statute was satisfied, and that's what's frustrating about this. The message will go with me back to Nevada, Your Honor. Thank you. Unless there are any other — I hope it goes back immediately. By telephone. Depends on how you define immediately. Thank you. Unless there are any other questions. Let's — thank you. No, no further questions. Okay. So a minute for — thank you. You have a minute. Yeah. Let's give you a minute for rebuttal. Thank you. Thank you. When we are considering the pronouncement of sentence and the facts that the district court relied on, I think that it's important to consider what she actually said. She said that Mr. McCaskill made several communications of threatening statements. He was going to get him. He was going to pay. Again, we have a situation here where the elements have to be met by a preponderance of the evidence, just because there's a lesser burden of proof. Don't we give any acknowledgement to the circumstances here, to the prior history of this fellow, to the prior experience of this district court with this person, with the purpose of a supervised release and of trying to keep persons on supervised release behaving in a law-abiding manner? Don't we consider all of that? And we do, Your Honor, for sentencing purposes. So if this was a situation where, when she was pronouncing her sentence and she was saying, I do not believe that the elements of the statute were met in this case by a preponderance of the evidence, but given all of the facts and circumstances surrounding this individual, I will send you a letter. No, that's not what I'm asking. I'm not saying don't we, in deciding whether or not the statute is satisfied, take into account these circumstances of prior history, whether or not this is immediate? Because you're — I just don't — I personally don't buy the argument that because it's on a phone, it's not immediate. Well, yes, Your Honor, but I think that what we could also do, if we're going to look into additional circumstances, is look into the fact that when, after all of these communications occurred, Officer Phillips asked Dustin to come to his office the next day. So if this was a person who truly believed that he was in danger of harm, he would not ask that person to come to his office. He was clearly — But he wasn't credible? Well, I don't — I'm not saying that he wasn't credible. I'm just saying that if we're looking at all of the facts and circumstances, it wouldn't lead a reasonable person to believe that they were in immediate bodily harm because of the additional circumstances. Thank you, counsel. Thank you. The case is — the case just argued is submitted.
judges: Schroeder, Watford, Korman